**In re Estate of**
Felipe McGuiness **Seman**,
Also Known as Felipe Igibor Seman,
Deceased.
Appeal No. 93-009
Civil Action No. 91-0918
June 24, 1994

Argued and Submitted December 9, 1993

Counsel for appellant, estate administrator Vicente T. Seman: Vicente T. Salas, Saipan.

Counsel for appellees, Jacoba T. Seman and Catalina T. Seman: Timothy H. Bellas, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

Vicente T. Seman ("Masao"), the administrator of the estate of Felipe McGuiness Seman ("Felipe"), appeals from a January 28, 1993, decision and order of the probate court distributing Lots 330 F and 330 G on Saipan to his children Jacoba T. Seman ("Jacoba") and Catalina T. Seman ("Catalina"), respectively. We hold that the probate court did not err in admitting hearsay testimony regarding Felipe's intent in distributing his property and in its interpretation of the customary law of partida. The order of distribution is, therefore, affirmed.

## ISSUES PRESENTED AND STANDARD OF REVIEW

The issues on appeal are:[1]

I.  Whether the probate court erred in its interpretation of the Chamorro customary law of partida.

II. Whether the probate court erred in allowing double hearsay testimony regarding Felipe's intent to distribute Lots 330 F and G to Jacoba and Catalina.

The first issue involves the trial court's interpretation of customary law, which we review de novo. *See Ada v. Sablan*, 1 N.M.I. 415, 422 (1990). The second issue, involving the admission of hearsay testimony into evidence, is reviewed for an abuse of discretion. *See In re Estate of Dela Cruz*, 2 N.M.I. 1, 8 (1991).

## FACTS AND PROCEDURAL BACKGROUND

Felipe purchased Lot 330 on August 13, 1965. He and his wife, Maria T. Seman ("Maria") had eight children: Masao, Jose T. Seman ("Georgie"), Isabel T. Seman ("Isabel"), Jacoba, Catalina, Bernadita T. Seman ("Bernie"), Ines S. Ada ("Ines") and Esther S. Chong ("Esther").

In 1978, with Felipe's permission, Masao and Ines had Lot 330 surveyed and subdivided into seven lots: Lots 330 A-G. Ines paid one-seventh of the survey cost.

After the survey was completed, Felipe orally designated Lots A, B, E and F for Georgie, Ines, Esther and Masao, respectively. Two of the remaining lots were originally designated for, respectively, either Bernie or Jacoba and Catalina.[2] Masao subsequently wanted Lot B near Georgie's Lot A, hoping to put the adjacent lots to commercial use with Georgie. To accommodate Masao, Felipe changed his earlier lot designations. By separate deeds of gift, Felipe conveyed

---

[1] The appellant raises four issues which we have rephrased and recategorized because the first three issues, as argued by the appellant, merely rephrase a single issue: whether or not the probate court correctly interpreted the law of partida. The issues as framed by the appellant are: "[1] Did the Superior Court erroneously apply the law of Partida?[; 2] If the Superior Court erroneously applied the law of Partida, what is the correct law of Partida?[; 3] Did Felipe Seman make a Partida under the correct law?[; and 4] Did the Superior Court err by allowing double hearsay?" Brief for Appellant at iv (emphasis omitted).

[2] In its decision and order, the trial court noted that Masao testified that initially either Bernie or Jacoba and Catalina were to receive Lots B and C; this was corroborated by Ines's testimony. *See In re Estate of Seman*, Civ. No. 91-0918 (N.M.I. Super. Ct. Jan. 28, 1993) (Decision and Order at 4). It appears as though the two lots may have been C and D.

Lot A to Georgie, Lots B and C to Masao, Lot D to Ines and Lot E to Esther.[3] Masao received Lot C in return for a house he had built on Lot F. Lots F and G were not conveyed by deed by Felipe to any of his children.

Felipe and Maria lived on Lot G. Jacoba lived on Lots F or G at various times. She cared for and supported her parents until they passed away.[4] Felipe passed away on April 21, 1987; Maria subsequently passed away, as well.[5]

Masao was appointed administrator of Felipe's estate on October 29, 1991. On December 12, 1991, he filed an inventory of the estate which included Lots F and G. Masao then petitioned the court for partial distribution. Jacoba filed an objection to the proposed partial distribution. She contested the inclusion of Lots F and G in the estate inventory, asserting that Lots F and G had already been distributed, by Felipe, to her and Catalina.[6]

At an evidentiary hearing held on January 28, 1993, the court admitted Jacoba's hearsay testimony that Felipe intended to distribute two of the lots to her and Catalina. Masao objected to the admission of such testimony. The court ruled that Felipe intended to give his daughters Jacoba and Catalina each a share in Lot 330. It then distributed Lots 330 F and 330 G, respectively, to them. Masao timely appealed.

## ANALYSIS

Masao's first contention is that the probate court misinterpreted the Chamorro customary law of partida. While he recognizes that the court was correct in stating that the traditional partida is based upon a father's wishes and intentions, he argues that such intentions must have been manifested externally by the decedent. He also argues that the probate court erred in admitting double hearsay testimony regarding Felipe's intent.[7]

We hold that the court did not misinterpret the customary law of partida. As such, we need not address Masao's contentions that there was no partida under his interpretation of that law. *See supra* note 1.[8] We also hold that the probate court did not abuse its discretion by admitting hearsay testimony regarding Felipe's intent in distributing his property.

## I. Probate Court Correctly Interpreted Law of Partida

Masao argues that the intent of a decedent to distribute property by partida must be shown by three manifest objective expressions: (1) the father must openly call a family meeting of all members; (2) he must designate specific parcels of land to specific children; and (3) the heirs must accept the property. For the following reasons, we conclude that the court did not err in interpreting the custom of partida to be a flexible distribution process for which evidence of external manifestations of intent by the decedent need not be strictly shown.

Masao applies common law principles, set forth in the Restatements of the Law, calling for manifest actions showing intent in giving and receiving property, to the law of partida. However, the Restatement provisions cited by Masao[9] are not applicable to this matter. First, only in the absence of local written or customary law may we consider the common law as enunciated in

---

[3] Bernie received a parcel of land in a different area, Kanat Tabla, by deed of gift.

[4] Because of a mental infirmity, Catalina could not contribute to their care.

[5] The record does not show when Maria died.

[6] Jacoba was appointed as guardian for Catalina in this matter.

[7] We reject Masao's contention that the court erroneously relied on equitable principles to decree the lots to Jacoba and Seman. While it may have been a poor choice on the part of the court to use the words "fair and equitable," it is not clear from the record that the court relied "on the perceived unfair-

ness of the father's refusal to give the Objector lot F or G." Brief for Appellant at 7-8.

[8] Masao argues that because external and formal elements of his version of a partida did not occur, no partida resulted. The appellees infer from Masao's contentions that he is arguing a lack of sufficiency of the evidence supporting the probate court's conclusions regarding Felipe's intent. However, whether or not substantial evidence supports the court's legal conclusion under its interpretation that we now uphold as correct is an issue that was never placed before us. Additionally, the matter below does not appear to hinge upon the amount of evidence before the court supporting its decision. Rather, it revolves around the weight and credibility the court assigned to the testimony. For example, there is testimonial evidence in the record before us that: (1) Felipe told Jacoba she was to have a lot and said "go build" a house; (2) Maria told Jacoba that Felipe said she was to receive a lot; (3) Maria told Jacoba that Masao stated that Jacoba was to receive a house lot; and (4) that Masao indicated, to an attorney, that Lot F was Jacoba's lot.

[9] Masao cites to RESTATEMENT (SECOND) OF CONTRACTS [hereinafter CONTRACTS] § 2 (1981) and RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS [hereinafter PROPERTY] § 31.1 (1983).

the Restatements. *See* 7 CMC § 3401. Local law exists regarding the effectuation of a partida. Second, the Restatement provision cited in support of external manifestations does not apply to real property,[10] and that related to real property deals only with contractual rights.[11] Finally, the distribution of land by partida is not a "gift." Rather, it is the mechanism under which succession to family land under Chamorro customary law is effectuated. *See In re Estate of Deleon Castro*, 4 N.M.I. 102, 110 (1994), citing Alexander Spoehr, SAIPAN: THE ETHNOLOGY OF A WAR-DEVASTATED ISLAND [hereinafter "Spoehr"] at 136-37 (Chicago Natural History Museum, Fieldiana: Anthropology, vol. 41, 1954).

■ The court correctly considered testimonial evidence to ascertain Felipe's intent. A partida ordinarily "occurs when the father calls the entire family together" and designates a division of the family land. *Deleon Castro*, 4 N.M.I. at 110; *see also Blas v. Blas*, 3 TTR 99, 108-09 (Trial Div. 1966).[12] Thus, in determining whether there has been a partida, a court will first look to the formal elements of a partida as set forth in *Blas*. However, where evidence of such elements is lacking, the court may examine the case before it with respect to its particular circumstances and need not apply a rigid set of requirements.

■ We have previously held that the distribution of land by partida may be a flexible process and "determined on a case-by-case basis." *Deleon Castro*, 4 N.M.I. at 110 (citing *In re Estate of Cabrera*, 2 N.M.I. 195, 207-08 (1991)).[13] This is because "the intent of the decedent is paramount and must be effectuated where discerned." *Deleon Castro*, 4 N.M.I. at 110 (citing Spoehr, *supra*, at 136).

■ Among the purposes of the Commonwealth probate law are "to discover and make effective the intent of a decedent in distribution of his property . . . [and] to realize the compelling interest of the Northern Mariana Islands in preserving the historic traditions and culture of its citizens of Northern Marianas descent." 8 CMC § 2104(b).[14] There are instances where a Chamorro father might not have performed a formal partida, but nonetheless intended to distribute his land by partida. *See, e.g.*, *Deleon Castro*; *Cabrera*, 2 N.M.I. at 207-08. Further, where there is no direct evidence that a partida occurred, indirect evidence may reveal that one was intended. *Cf. Guerrero v. Guerrero*, 2 N.M.I. 61, 70-72 (1991).

We disagree with Masao's argument that *Cabrera* stands for the proposition that specific external manifestations of distribution must be made by the decedent to each child. In that case, we stated that the decedent's intentions were shown in that he "orally gave away specific parcels to his children (as they married and moved out) by his designation and by the actual use of the lands by the children." *Cabrera*, 2 N.M.I. at 207-08. Evidence of a partida by those means does not necessarily mean that they are required in each case.

Here, the probate court was faced with competing evidence regarding Felipe's intent in distributing his property. It weighed this evidence and found that Felipe intended to distribute his property by partida in a certain manner. The court then determined that Felipe intended, as part of his scheme of distribution, that Jacoba and Catalina each receive one of the parcels in Lot 330. This determination is supported in the record and we see no error in the probate court's interpretation of the law of partida.

## II. Probate Court did not Abuse its Discretion in Allowing Hearsay Testimony

■ In *In re Estate of Barcinas*, 2 N.M.I. 437 (1992), we held that "'[hearsay] included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.'" *Id.* at 443-44 (quoting Com. R. Evid. 803(19) and 805). One of the exceptions is testimony regarding personal or family history that goes to proof of title to land in probate cases.

---

[10] See PROPERTY, *supra* note 9, § 31.1 (section covers "[g]ift of Donor's Ownership in *Personal Property*"; emphasis added).

[11] *See* CONTRACTS, *supra* note 9, at 1 ("there is no attempt [in this Restatement] to state the rules governing the creation and transfer of interests in property other than contract rights").

[12] "Ideally, a father should at some time before his death call his family together and designate a division of all family lands . . . among the children . . . ." *Blas v. Blas*, 3 TTR 99, 108 (App. Div. 1966). This distribution of land will take effect, consistent with the father's wishes, either immediately or upon his death. *In re Estate of Deleon Castro*, 4 N.M.I. 102, 110 (1994), citing Alexander Spoehr, SAIPAN: THE ETHNOLOGY OF A WAR-DEVASTATED ISLAND [hereinafter "Spoehr"] at 136 (Chicago Natural History Museum, Fieldiana: Anthropology, vol. 41, 1954).

[13] "Regardless of the formal aspects of the *partido* [sic], Chamorro custom dictates that the family land holdings should be divided at each generation." Spoehr, *supra* note 12, at 137.

[14] The probate code is applicable to the distribution of property in Felipe's estate because he died after the effective date of the code. *See* 8 CMC § 2102.

*See Guerrero*, 2 N.M.I. at 68-69 (citing Com. R. Evid. 803(19)); *Barcinas*, 2 N.M.I. at 443-45.[15]

The reasoning behind this exception is that, as stated previously, in the Northern Mariana Islands there is often no other available evidence to prove the wishes of a decedent concerning the distribution of estate property. *See Guerrero*, 2 N.M.I. at 70-71, and *Barcinas*, 2 N.M.I. at 444-45 (noting tradition of oral conveyances). The notion of probating an estate is fairly recent in the Commonwealth, and probate is sometimes not initiated until "many years after the decedent's death." *Id.* at 445.

In this matter, Jacoba's testimony about Maria's statements regarding Felipe's intent is admissible under Com. R. Evid. 803(19) because it is relevant and each component of the combined hearsay statement (from Felipe to Maria and from Maria to Jacoba) goes to the issue of Felipe's intent as to how he wanted his lands distributed.

### CONCLUSION

Based on the foregoing, we **AFFIRM** the probate court decision and **REMAND** for further proceedings consistent with this opinion.

---

[15] In *In re Estate of Barcinas*, 2 N.M.I. 437 (1992), we found that each part of the combined statements of disputed hearsay offered to show a decedent's intent in dividing property conformed with the exception provided in Com. R. Evid. 803(19). Com. R. Evid. 803(19) provides that even if a declarant is available as a witness, testimony "concerning personal or family history" is admissible. *Barcinas*, 2 N.M.I. at 444 (quoting rule).

